UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:19-CV-14420-ROSENBERG/MAYNARD

ATLANTIC HEALTHCARE, LLC;
LYRIC HEALTH CARE FACILITIES, LLC;
GRANTHAM HEALTH CARE, LLC; and
TIMOTHY F. NICHOLSON;

   Plaintiffs,

v.

ARGONAUT INSURANCE COMPANY,

   Defendant.

_____/

**ORDER DENYING PLAINTIFFS' MOTION FOR REMAND AND SANCTIONS**

This cause is before the Court on Plaintiffs' Motion for Remand and Sanctions. DE 5. The Court has considered the Motion, Defendant's Response (DE 9), Plaintiffs' Reply (DE 10), and the record. For the reasons that follow, the Motion is DENIED.

**I.   BACKGROUND**

This is an action seeking a declaratory judgment that Defendant Argonaut Insurance Company ("Argonaut" or "Defendant") is contractually obligated to defend Plaintiffs Atlantic Healthcare, LLC; Lyric Health Care Facilities, LLC; Grantham Health Care, LLC (together, the "Lyric Entities"); and Timothy F. Nicholson in ongoing state-court litigation.[1]

---

[1] The Lyric Entities and Nicholson are designated as Third-Party Plaintiffs/Petitioners in the Third-Party Petition for Declaratory Judgment, and Argonaut is designated as Third-Party Defendant/Respondent. In light of the severance of the state court's severance of the Petition, the Court refers to the Lyric Entities and Nicholson as Plaintiffs and Argonaut as Defendant.

### A. Underlying Case

On July 20, 2018, The Estate of Lily Coombs filed a Complaint against Timothy F. Nicholson, the Lyric Entities, and other defendants in the Nineteenth Judicial Circuit in and for Indian River County, Florida (the "Underlying Case"). DE 1-3. The Complaint alleges that Nicholson entered into an agreement with Atlantic Healthcare Center, Inc., a nursing home, pursuant to which Nicholson became the 100% beneficial owner and operator of the nursing home. *Id.* at 17–18 ¶¶ 64–65. Three groups were involved in the agreement: first, the Lyric Entities, which are allegedly wholly owned by Nicholson; second, a joint venture between Nicholson and three other individuals; and third, Atlantic Healthcare Center. *Id.* The Complaint alleges that the agreement was structured so as to conceal Nicholson's interests in the nursing home from the Florida Agency for Health Care Administration, thereby avoiding regulatory scrutiny into certain agreements between the parties. *Id.* at 18 ¶ 66. The Complaint further alleges that the members of the joint venture caused the nursing home to solicit high-acuity residents (residents with more serious medical needs) in order to increase the amount of Medicare funding received while failing to increase staffing levels to accommodate the high-acuity residents. *Id.* at 21 ¶ 82. Instead, the joint venture allegedly siphoned money from the nursing home through a series of agreements, some involving fees charged above market rates. *Id.* at 22 ¶ 89. Decedent Lily Coombs, who was a resident of the nursing home, sues through her estate, alleging that Nicholson and other defendants in the Underlying Case aided and abetted Atlantic Healthcare Center's breach of fiduciary duties to her, formed a civil conspiracy, and violated Fla. Stat. § 415.1111, which prohibits the exploitation of a vulnerable adult.

### B. Third-Party Petition

On March 5, 2019, Plaintiffs (Defendants in the Underlying Case) filed a Third-Party Petition for Declaratory Judgment against Argonaut in the same state-court action. DE 1-2. The Petition alleges that an insurance policy (the "Policy") between Plaintiffs and Argonaut requires Argonaut to defend Plaintiffs from the above claims and that Argonaut has refused to do so. *Id.* at 3 ¶¶ 7, 11. Plaintiffs seek a declaration that the Policy imposes a continuing duty to defend. *Id.* at 3 ¶ 12.

On October 16, 2019, Circuit Court Judge Janet C. Croom severed the Petition from the Underlying Case, creating a new state-court case. DE 1-4. On November 7, 2019, Argonaut removed the case to this Court pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction. 28 U.S.C. § 1332. On November 21, 2019, Plaintiffs filed the instant Motion for Remand and Sanctions. First, Plaintiffs argue that Argonaut has failed to prove by a preponderance that the amount in controversy is in excess of $75,000 as required for diversity jurisdiction. Second, Plaintiffs argue that the Court should remand the case under the abstention principles of *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). The Court concludes that it has subject-matter jurisdiction and that the circumstances do not warrant abstention, and therefore there is no basis to remand.

## II.   DISCUSSION

### A. Diversity Jurisdiction

District courts have original jurisdiction over any civil case where the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs" and the parties' citizenship is diverse. 28 U.S.C. § 1332. Unlike when a plaintiff files a claim in federal court that satisfies the amount in controversy requirement on its face, removal statutes are construed narrowly. *Burns v.*

*Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  Where, as here, the complaint seeks an unspecified amount of damages, Defendant must establish the amount in controversy by a preponderance of the evidence.  *Tapscott v. M.S. Dealer Service Corp.*, 77 F.3d 1353, 357 (11th Cir. 1996).  However, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it."  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).  Rather, a court is permitted to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations."  *Id.*

### i.   Citizenship

Plaintiffs do not dispute that there is complete diversity between the parties.  However, there appears to be confusion in Argonaut's Notice of Removal and its briefing on Plaintiffs' Motion to Remand regarding the citizenship of Plaintiffs, although it does not bear on whether there is complete diversity.  The Complaint in the Underlying Case alleges that Nicholson is a Florida citizen.  DE 1-3 at 12 ¶ 44.  The Notice of Removal suggests that Nicholson is a Maryland citizen but does not explain why the Complaint alleges otherwise.  DE 1 at 3.  Further, Nicholson submitted an affidavit stating that he has been a resident of Florida since 2005.  DE 10-1 at 1 ¶ 2.  Accordingly, the Court concludes for present purposes that Nicholson is a Florida citizen.

Nicholson allegedly holds a 100 percent interest in each Lyric Entity.  DE 1-3 at 5 ¶ 16.  This makes each Lyric Entity a citizen of Florida because, for purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of its member(s), not its state of formation or its principal place of business.  *Rolling Greens MHP, LP v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("[A] limited liability company is a citizen of any state of which a member of the company is a citizen.").  Argonaut is a Texas corporation with its principal place of business in Texas, making it a citizen of Texas.  DE 1 at 2; *see* 28 U.S.C. §

1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."). Because all Plaintiffs are Florida citizens and Argonaut is a Texas citizen, there is complete diversity between the parties.

ii.   *Amount in Controversy*

Plaintiffs argue that Argonaut has not shown by a preponderance that the amount in controversy is in excess of $75,000. The amount in controversy in a declaratory-judgment action is "the monetary value of the object of the litigation from the plaintiff's perspective." *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1342 (11th Cir. 2018) (quoting *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003)). And when a party seeks a declaratory judgment regarding the duty to defend, the amount in controversy includes the past and anticipated costs of defense of the underlying action. *See Stonewall Ins. Co. v. Lopez*, 544 F.2d 198, 199 (5th Cir. 1976) ("The pecuniary value of the obligation to defend the separate lawsuit is properly considered in determining the existence of the jurisdictional amount . . . ."); *Fla. Ins. Guar. Ass'n v. All the Way with Bill Vernay, Inc.*, 864 So. 2d 1126, 1129 (Fla. Dist. Ct. App. 2003) ("The law is well established that when an insurer unjustifiably refuses to defend its insured, the insurer is liable to the insured for the reasonable attorney's fees and other expenses incurred in defending the action brought by the third party as damages for the breach of contract.").[2]

The existing and anticipated costs of defense in the Underlying Case are more likely than not in excess of $75,000. First, the Complaint in the Underlying Case was filed on July 20, 2018,

---

[2] For reasons discussed *infra* Part II.B., there is a question whether Florida or Maryland law applies to the Policy. The Court notes that under Maryland law, the scope of recovery for breach of a duty to defend is at least as broad as that under Florida law. *Chang v. Brethren Mut. Ins. Co.*, 897 A.2d 854, 865 (Md. Ct. Spec. App. 2006) ("Under liability coverage, when the policy contains a duty to defend, an insured may recover not only fees and expenses incurred in defending a claim against it, but also in enforcing the insurer's obligations under the policy.").

and therefore eighteen months of legal expenses have already accrued. Argonaut notes that the accrued legal expenses have not been disclosed, and therefore the Court has not been provided with the number of attorney hours expended and at what billing rate.[3] DE 9 at 5. However, Argonaut demonstrates that the defense of the Underlying Case will be complex, document intensive, and high stakes. The Complaint alleges a complex scheme of agreements and monetary transfers among multiple entities designed to conceal Nicholson's interests from a Florida regulator. The expense of discovery alone is likely to be substantial, not to mention motion practice and trial. As a matter of judicial experience, it is unlikely that a case of this complexity—particularly one involving a death—can be fully litigated for less than $75,000. *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1064 (11th Cir. 2010) ("[W]hen a district court can determine, relying on its judicial experience and common sense, that a claim satisfies the amount-in-controversy requirements, it need not give credence to a plaintiff's representation that the value of the claim is indeterminate."). Accordingly, the Court finds that Argonaut has shown by a preponderance that the amount-in-controversy requirement is satisfied.

## B. Abstention

The Declaratory Judgment Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas*, 411 F.3d at 1330 (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)). "It would be uneconomical as well

---

[3] Argonaut could have made a stronger showing by, for example, submitting the declaration of an experienced practitioner estimating the number of hours typically expended in defending clients in complex nursing-home litigation. Assuming for illustrative purposes that an hourly rate of $400 would be reasonable under the circumstances of the Underlying Action, it would require 188 attorney hours to reach $75,000 in attorney's fees alone. That figure excludes costs, fees to hire experts, travel, and other expenses typically incurred in defending an action through trial. In the Court's experience, it is probable that at least that number of attorney hours would be spent in defending a complex, document-heavy case through trial, especially in light of the state-court litigation that has already transpired. This Order does not preclude the parties from presenting additional facts in the future, if relevant to the time of removal, demonstrating the absence of subject-matter jurisdiction. *See Univ. of S. Ala. v. Am. Tobacco Corp.*, 168 F.3d 405, 410 (11th Cir. 1999) ("'[I]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded' to the state court from whence it came.") (quoting 28 U.S.C. § 1447(c)).

as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495. This doctrine, sometimes referred to as *Brillhart/Wilton* abstention, instructs courts to decline to exercise jurisdiction under the Declaratory Judgment Act when doing so would cause "gratuitous interference with the orderly and comprehensive disposition of a state court litigation." *Ameritas*, 411 F.3d at 1330 (quoting *Brillhart*, 316 U.S. at 495).

In *Ameritas*, the Eleventh Circuit set forth a nonexhaustive list of nine factors to guide courts in the application of *Brillhart/Wilton* abstention:

(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* at 1331. Although *Ameritas* addressed abstention only in the context of parallel state proceedings—that is, where the issues and parties are substantially the same in the state and federal actions—the Eleventh Circuit has suggested that *Ameritas* applies even when a pending state proceeding is not parallel to the federal proceeding. *See First Mercury Ins. Co. v. Excellent Computing Distrs., Inc.*, 648 F. App'x 861, 866 (11th Cir. 2016) ("[N]othing in the Declaratory Judgment Act suggests that a district court's discretionary authority exists only when a pending state proceeding shares substantially the same parties and issues."). Therefore, the Court proceeds to the *Ameritas* factors.

1. As is generally true in insurance cases, Florida has an interest in affording its citizens a forum in which to vindicate their rights under insurance policies. That said, the interest is somewhat diminished due to the uncertainty whether Florida law controls the interpretation of the Policy, discussed in the ninth factor below. This factor is accordingly neutral.

2. A federal declaratory judgment would settle the controversy between Plaintiffs and Argonaut. Plaintiffs argue for a broader interpretation of "controversy," to include all allegations and parties in the Underlying Case, but that is unpersuasive because this action and the Underlying Case are not parallel. Argonaut is no longer a party to the Underlying Case, and the duty-to-defend issue is no longer before the state court. Further, the state court severed this claim from the Underlying Case, and therefore this declaratory-judgment action has not multiplied the proceedings—in no event would this dispute have been resolved in the Underlying Case. This factor weighs against abstention.

3. A declaratory judgment would clarify the legal relations of the parties because Argonaut has refused to defend Plaintiffs in the Underlying Case. If that decision was in error, it should be rectified promptly to avoid further prejudice to Plaintiffs.

4. There is no indication that Argonaut's removal of the case constitutes procedural fencing. Plaintiffs' argument to the contrary is, in essence, an objection to the state court's severance of the Petition from the Underlying Case. Plaintiffs' position is that Argonaut misled the state court by not disclosing its intent to remove the Petition when Argonaut requested that the state court sever the Petition. In support of that argument, Plaintiffs submitted a transcript of the state-court hearing in which the Petition was severed from the Underlying Case. Relying principally on Judge Croom's remark that she would remain the judge assigned to the Petition after it was severed, Plaintiffs argue that Argonaut was under an ethical obligation to disclose its intent to remove the case. Plaintiffs cite no authority for that proposition, and after reviewing the transcript, the Court cannot conclude that Judge Croom's remark was anything other than a description of how the severance would work procedurally.[4] Plaintiffs have not demonstrated that the severance of the Petition was in any way conditional on Judge Croom retaining jurisdiction. This absence of procedural fencing weights against abstention.

5. There is no indication that this action would encroach on state jurisdiction. The duty-to-defend issue is not before the state court, and the nature of a declaratory judgment on Argonaut's duty to defend—a matter of contractual interpretation—will not hamstring the state court in determining any issue before it in the Underlying Case. Because this case would not cause friction with the state court, this factor weighs against abstention.

---

[4] The exchange begins with a discussion of whether it is proper to consolidate insurance actions with the underlying case for the purposes of discovery. Plaintiffs argued: "[W]e want one judge deciding all of the issues so that there aren't two issues being made." DE 5-2 at 9:15–17. Judge Croom responded: "One, in our county, I will be the Judge for both cases. So there's no separation of judges, so you shouldn't have that concern. Number two, what is the overlap in the discovery? The elements of proof for the causes of action for this party appear to be completely different than the elements of proof that will be discoverable in the other case." *Id.* at 10:9–16. She continued: "I'm unclear of why they would be joined together at this point. It is common and customary to separate them out and handle the [declaratory] action, essentially as a matter of law on the elements of pleading." *Id.* at 13:14–20.

6. There is no alternative remedy that is better or more effective. A declaratory judgment issued by the state court would have roughly the same effect as a declaratory judgment issued by the federal court. This weighs against abstention.

7. The factual issues of an underlying action generally do not bear on the issuance of a declaratory judgment on a duty-to-defend claim. *See Composite Structures, Inc. v. Cont'l Ins. Co.*, 560 F. App'x 861, 864 (11th Cir. 2014) ("In Florida, 'the general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the actual facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses.'") (quoting *Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*, 771 So. 2d 579, 580–81 (Fla. Dist. Ct. App. 2000)).[5] This factor weighs against abstention.

8. Because factual issues in the Underlying Case are unlikely to bear on the duty-to-defend claim, the state court's familiarity with the facts of the Underlying Case does not weigh in favor of abstention.

9. Although Plaintiffs correctly note that this declaratory judgment will not implicate federal law, it is not clear that it will implicate Florida law either. Because this is a diversity case, the Court must apply Florida's choice-of-law rules. *Rando v. Gov't Emps. Ins. Co.*, 556 F.3d 1173, 1176 (11th Cir. 2009). Under Florida law, the law of the jurisdiction where the insurance contract was executed governs the parties' rights and liabilities under the contract. *Id.* The parties have not been heard on this issue, and the Court does not make a determination on which law governs the Policy. However, the Policy was issued to Lyric

---

[5] Maryland law applies a similar standard. *See Mut. Benefit Ins. Co. v. Jordan*, 11 F. App'x 79, 81 (4th Cir. 2001) (stating that an insurer's duty to defend is determined "by examining the four corners of the complaint and the four corners of the policy") (quoting *Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.*, 688 A.2d 496, 505 (Md. Ct. Spec. App. 1997)) (internal quotation marks omitted).

Health Care Facilities, LLC, with a mailing address in Maryland. DE 14-1 at 40. Further, the Policy contains a Maryland-specific amendatory endorsement, with no equivalent Florida endorsement. *Id.* at 89. These observations make it plausible that Maryland, rather than Florida law, will govern the Policy. This possibility weakens the nexus between the Policy and Florida law or public policy, and this factor weighs against abstention.

The *Ameritas* factors do not support abstention. The nature of this action—involving an issue and a party not before the state court—indicates that there is little risk of "gratuitous interference" with the state court. *Ameritas*, 411 F.3d at 1330 (quoting *Brillhart*, 316 U.S. at 495). Rather, the Court's exercise of jurisdiction is consistent with "considerations of federalism, efficiency, and comity." *Id.* at 1331 (quoting *Brillhart*, 316 U.S. at 495).

### C.  CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows**:**

1. Plaintiffs' Motion to Remand [DE 5] is **DENIED**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 17th day of January, 2020.

*/s/ Robin L. Rosenberg*
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record