UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:19-CV-14420-ROSENBERG/MAYNARD

ATLANTIC HEALTHCARE, LLC, et al.,

      Plaintiffs,

v.

ARGONAUT INSURANCE COMPANY,

      Defendant.
_____/

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS**

**THIS CAUSE** is before the Court upon the Motion for Summary Judgment [DE 27] filed by Plaintiffs Atlantic Healthcare, LLC, Lyric Health Care Facilities, LLC, Grantham Health Care, LLC, and Timothy F. Nicholson (collectively, "Plaintiffs"), and the Amended Motion for Summary Judgment [DE 57] filed by Defendant Argonaut Insurance Company ("Defendant"). These Motions were referred to Magistrate Judge Shaniek M. Maynard for a Report and Recommendation. DE 43. On October 15, 2020, Judge Maynard issued her Report and Recommendation [DE 73] recommending that Plaintiffs' Motion for Summary Judgment be granted and Defendant's Motion for Summary Judgment be denied. DE 73 at 27. The Court has conducted a *de novo* review of Judge Maynard's Report and Recommendation, Defendant's objections thereto [DE 75], Plaintiffs' response to Defendant's objections [DE 76], and the record, and is otherwise fully advised in the premises.

Upon review, the Court finds Judge Maynard's recommendation to be well reasoned and correct. The Court agrees with the analysis in Judge Maynard's Report and Recommendation and concludes that Plaintiffs' Motion for Summary Judgment should be granted and Defendant's

Motion for Summary Judgment should be denied. The Court also finds that Defendant's objections warrant discussion.

Defendant is correct that under Maryland law, a court interpreting an insurance policy does not, as a matter of course, construe the policy against the insurer. *James G. Davis Contr. Corp. v. Erie Ins. Exch.*, 126 A.3d 753, 759 (Md. Ct. Spec. App. 2015). Rather, a policy's terms are interpreted based on the same principles that generally apply to the construction of other contracts. *Kendall v. Nationwide Ins. Co.*, 702 A.2d 767, 770-71 (Md. 1997). "As such, a court interpreting an insurance policy is to examine the instrument as a whole, focusing on the character, purpose, and circumstances surrounding the execution of the contract." *Bailer v. Erie Ins. Exch.*, 687 A.2d 1375, 1378 (Md. 1997). Although a court will try to give effect to every clause and phrase, "particular provisions of a contract are not to be read in isolation but rather the document is to be read as a whole to discover its true import." *Simkins Indus., Inc. v. Lexington Ins. Co.*, 401 A.2d 181, 186 (Md. Ct. Spec. App. 1979).

Additionally, "any ambiguity will be construed liberally in favor of the insured and against the insurer as *drafter of the instrument*." *Harleysville Preferred Ins. Co. v. Rams Head Savage Mill, LLC*, 187 A.3d 797, 807 (Md. Ct. Spec. App. 2018) (quotation marks omitted). Ambiguity exists when language in a policy "suggests more than one meaning to a reasonably prudent layperson." *Id.* (quotation marks omitted). Regarding an insurance policy's exclusions, "[a]lthough an insurer has a right to determine what occurrences it will cover or exclude as the drafter of the Policy, when an exclusion lends itself to more than one reasonable interpretation, the exclusion will be construed narrowly against the insurer." *White Pine Ins. Co. v. Taylor*, 165 A.3d 624, 635 (Md. Ct. Spec. App. 2017) (quotation marks omitted); *see Haynes v. American Cas. Co.*, 179 A.2d 900, 904 (Md. 1962) ("[W]here an insurance company, in attempting to limit coverage,

2

employs ambiguous language, the ambiguity will be resolved against it as the one who drafted the instrument . . . ."); *see also Pa. Thresherman & Farmers' Mut. Cas. Ins. Co. v. Shirer*, 168 A.2d 525, 537 (Md. 1961) (same).  And as Judge Maynard noted, "[a]n insurer relying on policy exclusions bears the burden of proving the exclusions."  DE 73 at 10 (citing *Ellicott City Cable, LLC v. Axis Ins. Co.*, 196 F. Supp. 3d 577, 584 (D. Md. 2016)).

The Court also notes that under Maryland law, the duty to defend is construed liberally in favor of the policyholder.  *Selective Way Ins. Co. v. Nationwide Prop. and Cas. Ins. Co.*, 219 A.3d 20, 32 (Md. Ct. Spec. App. 2019).  "[E]ven if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the Insurer still must defend if there is a *potentiality* that the claim could be covered by the policy."  *Id.* (quotation marks omitted).  "Any potentiality of coverage, no matter how slight, gives rise to a duty to defend."  *Id.* (quotation marks omitted).  "Where a potentiality of coverage is uncertain from the allegations of a complaint, any doubt must be resolved in favor of the insured."  *Id.* (quotation marks omitted).

With these principles in mind, the Court turns to Defendant's objections.

### A. Professional Services Exclusion

Defendant contends that the Professional Services Exclusion in the parties' D&O policy eliminates coverage for Plaintiffs.  Defendant argues that by limiting the exclusion's scope to health care and medical treatment services, Judge Maynard interpreted the exclusion too narrowly, rendered certain language in the exclusion superfluous, and ignored the exclusion's intent.  DE 75 at 3-6.  Moreover, Defendant argues that "the Underlying Complaint includes claims that fall squarely within the examples" covered by the exclusion.  *Id.* at 5.[1]  Defendant rejects Judge Maynard's conclusion that certain allegations in the Underlying Complaint were mere business

---

[1] The "Underlying Complaint" refers to the Amended Complaint in the underlying civil case filed by the Estate of Ms. Lily Coombs on July 20, 2018.  It appears at DE 57-1.

decisions (and thus not "Professional Services"), arguing instead that a reasonable person could conclude that such allegations were acts and defects in the contracting and credentialing process, thereby falling within the Professional Services Exclusion. *Id.* at 5-6.

The Court finds that the Professional Services Exclusion is ambiguous. Based on its language, a reasonably prudent layperson might find that it relates only to health care and medical treatment services—particularly given the exclusion's examples—or alternatively, other professional services as well, given the clause "or any other professional services, including but not limited to." *See* DE 73 at 13. The Court, however, does not glean any extrinsic evidence that resolves this ambiguity. Because the ambiguity remains after considering extrinsic evidence, the Court construes the Professional Services Exclusion against Defendant (*i.e.*, the insurer), and thus narrowly. *White Pine* 165 A.3d at 635.

The Court agrees with Judge Maynard that when considering the D&O policy as a whole, it would be inappropriate to construe the Professional Services Exception so broadly that it covers "every kind of professional service imaginable." DE 73 at 15. Defendant appears to concede this. *See* DE 75 at 6 ("Not all services are excluded under the Policy."). Further, Defendant has failed to persuade the Court that every allegation in the Underlying Complaint is covered by the Professional Services Exception, particularly when construing the exclusion narrowly. Judge Maynard cites multiple allegations in the Underlying Complaint that do not constitute "Professional Services," but rather business decisions made by Plaintiffs. *See* DE 73 at 14. And while Defendant suggests that "a reasonable person could conclude that allegations pertaining to business decisions that Plaintiff made could" fall within the Professional Services Exception [DE 75 at 6], that is neither the applicable standard nor language from the D&O policy. Defendant's objections regarding the Professional Services Exclusion thus fail.

### B. Managed Care Activity Exclusion

Defendant argues that the Managed Care Activity Exclusion eliminates coverage for Plaintiffs. Defendant states that Count III of the Underlying Complaint (Violations of Florida Statutes § 415.1111) falls within the exclusion "because it relates to the management of the nursing home and excludes breaches of duty, failure to follow adequate practice parameters or protocols, and neglect." DE 75 at 7. More specifically, "[e]xploiting vulnerable adults by taking their assets is excluded as a breach of duty and as a failure to perform a Managed Care Activity. *Id.* Defendant states:

> The gist of the underlying Complaint is financial fraud. Every act alleged in the Complaint is in furtherance of that fraud. The Managed Care Exclusion eliminates coverage for "any act, error, omission, misleading statement, misstatement, neglect, or breach of duty, committed or attempted by any Insured in the performance of, or failure to perform any Managed Care Activity." Ms. Coombs is in a managed care facility and is a high acuity level resident requiring extra special attention. "Any act" related to a "misleading statement, misstatement, neglect, or breach of duty" surrounding her management at the facility would be excluded. Every allegation of the Complaint relates to an attempt to take financial advantage of her through misstatement, neglect, or breach of duty.

*Id.* at 7-8.

As Judge Maynard and Plaintiffs note, Defendant's arguments ignore or misstate the Managed Care Activity Exclusion. That "Ms. Coombs is in a managed care facility and is a high acuity level resident requiring extra special attention" does not mean that all of Plaintiffs' activities are "Managed Care Activities," as that term is defined in the D&O policy. Further, it is not true that "'[a]ny act' *related to a* 'misleading statement, misstatement, neglect, or breach of duty' *surrounding her management at the facility*" falls within the Managed Care Activity Exclusion. *Id.* at 8 (emphases added). Rather, the exclusion applies to losses "arising out of, or attributable to the actual or alleged performance or rendering of or failure to perform or render any Managed Care Activity." DE 28-1 at 79. The Court declines to depart from the exclusion's language and

5

construe it as broadly as Defendant does.

### C. Prior Acts Exclusion

Defendant argues that the Prior Acts Exclusion eliminates coverage for Plaintiffs. Defendant notes that in its Motion for Summary Judgment, it argued that when Ms. Coombs moved into Atlantic Healthcare Nursing Home on January 9, 2012, that became the start date for the fraud and conspiracy from which Ms. Coombs suffered. DE 75 at 9. Defendant argues that Judge Maynard "overlooks that date as the inception of the fraud and not the fraud itself, since "[a]s alleged in paragraph 99 of the Underlying Complaint, from the very beginning of Ms. Coombs [sic] arrival, she was 'solely dependent on employees, officers, directors, and agents of Atlantic Healthcare Center, Inc. to provide for her daily care, protection, services, supplies, and personal and intimate needs.'" *Id.* Defendant argues that Judge Maynard mistakenly viewed facts in the Underlying Complaint independently, rather than "a series of logically or casually [sic] connected facts that fall within the [Prior Acts] Exclusion." *Id.* Moreover, Defendant states that Plaintiffs' fraud continued daily, including the allegation in paragraph 69 of the Underlying Complaint that on May 25, 2012, Nicholson concealed his ownership in Atlantic Healthcare Nursing Home when submitting a license renewal application to the Agency for Health Care Administration. *Id.* at 10. Defendant asserts that Nicholson's concealment continued every day until Ms. Coombs or her representatives discovered it. *Id.*

The Court is unpersuaded by Defendant's objections. As Plaintiffs note, Defendant mischaracterizes paragraph 99 in the Underlying Complaint, for the paragraph does not expressly state that "from the very beginning of Ms. Coombs [sic] arrival," Ms. Coombs was solely dependent on the various individuals at Atlantic Healthcare Center. Rather, paragraph 99 does not make any temporal reference. Equally notable, paragraph 99 is incorporated into Counts I and II

6

of the Underlying Complaint, but not Counts III or IV. The same is true of paragraph 69. Finally, while Defendant characterizes the allegations in the Underlying Complaint as part of a daily, ongoing fraudulent scheme perpetrated over years, that is not language from the Underlying Complaint.

This Court must construe the duty to defend liberally in Plaintiffs' favor. If any potential for coverage exists—however slight—Defendant has a duty to defend. Notwithstanding Defendant's objections, the Court concludes that there remains a potential for coverage. For the foregoing reasons, it is hereby **ORDERED and ADJUDGED**:

1. Magistrate Judge Maynard's Report and Recommendation on Plaintiffs' Motion for Summary Judgment and Defendant's Amended Motion for Summary Judgment [DE 73] is **ADOPTED**;

2. Plaintiff's Motion for Summary Judgment [DE 27] is **GRANTED**;

3. Defendant's Amended Motion for Summary Judgment [DE 57] is **DENIED**;

4. All other pending motions are **DENIED AS MOOT**, all deadlines are **TERMINATED**, and all hearings are **CANCELLED**;

5. The Clerk of the Court is directed to **CLOSE THIS CASE**; and

6. Plaintiffs shall submit a proposed final judgment in Microsoft Word format via e-mail to rosenberg@flsd.uscourts.gov. The proposed final judgment is due within three business days of the date of rendition of this Order. Plaintiffs shall confer with Defendant prior to submitting the proposed final judgment and inform the Court, in the e-mail, of the result of the conferral process.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 27th day of January, 2021.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record